**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0319** (Monongalia County 19-F-174)

**S.W.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner S.W., by counsel Stephanie Nethken, appeals the order of the Circuit Court of Monongalia County, entered on March 3, 2020, denying her motions for a new trial and for judgment of acquittal, and sentencing her to an effective term of imprisonment for five to twenty-five years for her felony convictions of sexual abuse of a child by a parent (in violation of West Virginia Code § 61-8D-5) and first-degree sexual abuse (in violation of West Virginia Code § 61-8B-7), together with a consecutive term of six months for her misdemeanor conviction of domestic assault (in violation of West Virginia Code § 61-2-28(b)). [1] The State of West Virginia appears by counsel Patrick Morrisey and Scott E. Johnson.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. W. appeals the circuit court order related to her criminal convictions on two grounds. First, she argues that the circuit court erred in denying her motion for post-verdict judgment of acquittal because the evidence was insufficient to support a guilty verdict. Second, she argues that the circuit court erred in denying her motion for a new trial after she produced a "new witness" who would have corroborated her testimony.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

We begin with the first assignment of error, which challenges the sufficiency of the evidence to support the conviction. The assignment of error is offered as a general challenge, without a specific identification of the elements for which Ms. W. finds a lack of evidentiary support, and Ms. W. offers scant detail in a brief that is nearly devoid of the required factual statement. The lack of detail is problematic, first, in that it may be insufficient to satisfy the requirements of Rule 10(c)(4) of the West Virginia Rules of Appellate Procedure, which requires a petitioner to present a statement of the case "[s]upported by appropriate and specific references to the appendix or designated record, . . . [and] contain[ing] a concise account of the procedural history of the case and a statement of the facts of the case that are relevant to the assignments of error." Ms. W.'s statement of the case sets forth only the procedural history of the case, entirely omitting a narrative of supported facts.[2] The lack of detail is problematic for Ms. W., second, because

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

---

[2] Ms. W.'s argument includes a very brief recitation of facts, including some citations to the appendix record on appeal. We consider the facts presented so that we may reach the merits of the appeal before us, but we caution litigants that we look with disfavor on the disregard of our plainly stated requirements, which were created for litigants' benefit as much as for the benefit of judicial economy.

> Rule 10 of the Rules of Appellate Procedure was designed to simplify the appeal process and to help lawyers file clear, concise, and organized briefs. "Although we liberally construe briefs in determining issues presented for review," *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996), we have often said that "a lawyer has a duty to plead and prove his case in accordance with established court rules." *State Dep't of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995). Lawyers who fail to follow our appellate rules inevitably generate a disjointed, poorly written, or difficult to understand brief, and they should not anticipate that this Court will find or make their arguments for them. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

*Metro Tristate, Inc. v. Pub. Serv. Comm'n of W. Va.*, ___ W. Va. ___, ___, 859 S.E.2d 438, 445-46 (2021). In this instance, the displaced and abbreviated factual statement falls short of depicting the full panoply of events that led to Ms. W.'s arrest.

Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

The trial evidence, as we glean it from Ms. W.'s short brief and the appendix record on appeal, taken in the light most favorable to the prosecution, was sufficient to establish Ms. W.'s guilt of the crimes charged, and, thus, the criminal conviction survives our review under the applicable standard:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d 169, Syl. Pt. 1.

At trial, Ms. W.'s daughter (age fifteen at the time of these events) testified that she babysat her brother (age six at the time of these events) one night while Ms. W. attended a concert to celebrate her birthday. Ms. W. returned home grossly intoxicated and repeatedly stated that she wanted to "f—k [her son] and she wanted to make him feel real good…." The daughter walked into a bathroom in the home and found Ms. W. with her hand on the boy's hip and her head near his groin. The daughter testified that she pulled the boy away from petitioner, instructed him to run, and messaged a friend to ask the friend to call the police. The daughter ran to her room, and Ms. W. followed, expressing to her daughter, as she had to her son, "I want to f—k you. I want to make you feel good." The daughter testified that she was certain Ms. W.'s motives were sexual. The daughter was in contact (via texting or messaging) with at least two people throughout this episode. She described events as they occurred. The assistant prosecuting attorney went through these communications when the daughter testified, and at least one of the text recipients testified at trial.

Several officers responded to the call that the daughter's friend made to the police. Ms. W., partially undressed, greeted the first officer at the door. An officer instructed her to clothe herself. The same officer talked to Ms. W.'s son; the officer testified that the boy told him, "My mom's doing inappropriate stuff to me." The transcript from another officer's recording device shows that the boy asked the officer caring for him, "[C]an you talk to my mom about the weird stuff?" The officer asked what was "weird," and the boy replied, "Like, touching, like, the private part." He also told the officer, "She pulled [my pants], but I tried to keep 'em up so I had to try and escape." The transcript was published to the jury. The boy was interviewed at The Child Advocacy Center, where he reported that he did not lie to the police officer. The social worker who interviewed the boy said that "he disclosed that his mom had touched his private parts," and he confirmed his meaning by pointing to his groin area.

Though Ms. W. argues that her daughter's testimony was at times inconsistent with earlier statements, we find that seeming inconsistencies of importance were adequately explained by the

daughter. Moreover, our jurisprudence does not contemplate our interference in credibility determinations:

> An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact. *State v. Bailey*, [151 W. Va. 796, 155 S.E.2d 850 (1967)]. It is for the jury to decide which witnesses to believe or disbelieve. Once the jury has spoken, this Court may not review the credibility of the witnesses.

*Guthrie*, 194 W. Va. at 670 n.9, 461 S.E.2d at 176 n.9. The jury was presented with evidence sufficient to support Ms. W.'s conviction, and we find no error.

We turn to Ms. W.'s second assignment of error, in which she argues that the circuit court erred in denying her motion for a new trial after she informed the court that she had received a letter from the paternal grandmother of one of her children, and that this grandmother informed Ms. W. that Ms. W.'s daughter had received psychological treatment while in her care, and that the grandmother was of the opinion that the daughter would "say anything . . . to get her way." We have set forth the grounds for a new trial based upon newly discovered evidence:

> A new trial will not be granted on the ground of newly-discovered evidence unless the case comes within the following rules: (1) The evidence must appear to have been discovered since the trial, and, from the affidavit of the new witness, what such evidence will be, or its absence satisfactorily explained. (2) It must appear from facts stated in his affidavit that plaintiff was diligent in ascertaining and securing his evidence, and that the new evidence is such that due diligence would not have secured it before the verdict. (3) Such evidence must be new and material, and not merely cumulative; and cumulative evidence is additional evidence of the same kind to the same point. (4) The evidence must be such as ought to produce an opposite result at a second trial on the merits. (5) And the new trial will generally be refused when the sole object of the new evidence is to discredit or impeach a witness on the opposite side.

Syl., *State v. Frazier*, 162 W. Va. 935, 253 S.E.2d 534 (1979). We explained in *Frazier* that, generally, all five elements must be satisfied before a petitioner's motion for a new trial may be granted on the ground that evidence is newly discovered. *Id*. at 941, 253 S.E.2d at 537. Failure to satisfy any single element is fatal to a petitioner's request for relief.

It is apparent that Ms. W. has failed to satisfy each prong of the *Frazier* test. First, she submitted an unsigned letter (and not the required, duly sworn affidavit) to alert the circuit court to her claim that newly discovered evidence warranted a new trial. Second, there is no indication that Ms. W. was "diligent" in securing this evidence inasmuch as the impressions described in the grandmother's letter appear to have been made prior to the events giving rise to Ms. W.'s indictment. Furthermore, the grandmother described events involving social services agencies and psychologists, but Ms. W. fails to explain why she did not attempt to secure documentary evidence from those agencies prior to her trial. Third, the evidence is likely cumulative because Ms. W.'s trial strategy centered on discrediting her daughter and demonstrating that the daughter's testimony

4

was contrived. Fourth, the evidence presented in the grandmother's letter is unlikely to yield an opposite result at a trial on the merits because Ms. W.'s daughter was not the sole witness describing the events that led to Ms. W.'s indictment. The testimony of the responding officers alone supported the firm conclusion that Ms. W.'s son expressed a valid fear of Ms. W.'s attempts to sexually abuse him, and the Child Advocacy Center's social worker's testimony further supported this conclusion. Fifth and finally, we find that the unsigned letter that Ms. W. presented as newly discovered evidence was nothing more than an attack on her daughter's character meant to depict the daughter as a potentially pathological liar. The grandmother's letter related that a doctor told the grandmother that she should be very careful because Ms. W.'s daughter "would get someone in very big trouble. . . ." She also wrote that social workers who worked with Ms. W.'s daughter "knew she was lying" about things reported to them. Incredibly, the grandmother's letter purported to give Ms. W.'s counsel permission to obtain documents supporting these statements, but Ms. W. instead rested her motion on an unsigned letter promoting the unsubstantiated conclusion that Ms. W.'s daughter is dishonest and deceitful. The sole purpose of the letter was to discredit a key witness, who was subjected to cross-examination at Ms. W.'s trial. For these reasons, we find that the circuit court did not err in denying Ms. W.'s motion for a new trial.

For the foregoing reasons, we affirm.

Affirmed.


**ISSUED:** January 18, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton